# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Adam Construction Excavator, LLC, :
t/d/b/a Adam's Tree Service & :
Removal, LLC, and Adam Atiyeh, :
                    Petitioners :
                                 :
            v.                   :    No. 556 C.D. 2024
                                 :    Submitted: May 6, 2025
Department of Labor and Industry, :
Bureau of Labor Law Compliance,  :
                    Respondent   :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED: June 13, 2025

Adam Construction Excavator, LLC, t/d/b/a Adam's Tree Service &
Removal, LLC, (Adam's Tree) and Adam Atiyeh (Mr. Atiyeh) (together,
Petitioners) petition for review of an April 3, 2024 Order of the Secretary of Labor
and Industry (Secretary), which imposed a $195,000.00 civil monetary penalty on
Petitioners, jointly and severally, for 39 violations of the Child Labor Act (Act).[1]
Petitioners argue the penalty was imposed after a procedural default based on
deemed admissions, and, because the Secretary did not apply the appropriate test for
determining whether to permit a late response, the Order should be reversed and this
matter remanded for a decision on the merits. Petitioners also argue the Order

---

[1] Act of October 24, 2012, P.L. 1209, *as amended*, 43 P.S. §§ 40.1-40.14.

exceeded the relief sought by the Department of Labor and Industry, Bureau of Labor Law Compliance (Bureau), and does not recognize the distinction between corporate and personal liability. Upon review, we vacate the Secretary's Order and remand for further consideration, as set forth more fully below.

## I. BACKGROUND

On February 28, 2023, the Bureau issued an Order to Show Cause (OSC) against Petitioners.[2] (Reproduced Record (R.R.) at 2-10.)[3] Therein, the Bureau alleged various violations of the Act following an investigation of a fatal wood chipping accident involving a 17-year-old minor. (*Id.* at 5.) In addition to the minor who died, the Bureau alleged two other minors, ages 13 and 17, performed work for Petitioners, which included operating a woodchipper, chainsaw, and other machinery. (*Id.* at 5-6.) The Bureau also alleged, among other things, that the minors did not have the required work permits, Petitioners did not maintain certain required records, and Petitioners did not provide the minors with required breaks. (*Id.* at 6-8.) Under the heading "CHARGES," the Bureau stated Petitioners were each being "charged with **thirty** separate violations of the Act." (*Id.* at 8 (emphasis in original).) The Bureau sought imposition of an administrative fine of $5,000.00 per violation for a total of $150,000.00. (*Id.*) The OSC was accompanied by a Notice to Defend directing Petitioners to file an answer within 20 days or "all

---

[2] The Order to Show Cause identified Adam's Tree as "Adam Excavation Contractor, LLC, in its own capacity and trading and doing business as Adam's Tree Service, LLC" and Mr. Atiyeh individually. (Reproduced Record at 4.) The Secretary subsequently corrected the name to Adam Construction Excavator, LLC, t/d/b/a Adam's Tree Service and Removal, LLC." (Secretary's Order at 1 n.1.)

[3] Although Rule 2173 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2173, requires the reproduced record to be numbered in Arabic figures followed by a small "a," the Reproduced Record here only utilizes Arabic figures.

relevant facts stated in the Order [to Show Cause] may be deemed admitted." (*Id.* at 2.) A certificate of service indicates the OSC was mailed by first-class and certified mail to a Schnecksville address for Adam's Tree, and a Whitehall address for Adam's Tree and Mr. Atiyeh. (*Id.* at 10.)

On May 9, 2023, the Bureau filed a Motion to Enter Default and Deem Facts Admitted (MDFA). (*Id.* at 12-27.) Therein, the Bureau averred that the OSC mailed to the Schnecksville address had been returned, and the one sent to Adam's Tree at the Whitehall address was returned as "unclaimed" and "vacant." (*Id.* at 13-14.) However, the Bureau averred that the one sent to Mr. Atiyeh individually was not returned. (*Id.* at 14.) On March 28, 2023, the Bureau allegedly sent the OSC to Petitioners' last known address in Bethlehem via first-class and certified mail. (*Id.*) The Bureau averred the first-class letter was not returned nor was the certified letter, though the "delivery status is unclear." (*Id.*) In addition, the Bureau sent copies to an attorney who represented Petitioners during the investigation. (*Id.*) According to the MDFA, the attorney confirmed receipt of the OSC on April 6 and that the Bethlehem address was correct, and advised he would not be representing Petitioners further. (*Id.* at 15.) The Bureau averred that Petitioners did not file any response to the OSC and, consequently, they were in default. (*Id.* at 15-16.) The Bureau asked that paragraphs 1 through 15 of the OSC be deemed admitted, citing 1 Pa. Code § 35.37. (*Id.* at 16.) The MDFA was accompanied by a Notice advising an answer or objections must be filed within 10 days. (*Id.* at 12.) A certificate of service shows the MDFA was served on Petitioners at the Bethlehem address via first-class mail. (*Id.* at 27.)

A Hearing Officer was appointed, who issued a Proposed Report on July 24, 2023. (*Id.* at 29-41.) The Hearing Officer found Petitioners were properly served

and did not file a response to either the OSC or the MDFA; accordingly the facts alleged were deemed admitted. (*Id.* at 31-34.) The Hearing Officer further found that although the Bureau alleged 30 violations, it was unclear how that number was reached since the OSC did not separately number the counts. (*Id.* at 35.) Instead, the Hearing Officer found there were 25 separate violations alleged, 19 of which the Hearing Officer concluded were actually committed. (*Id.* at 36, 38.) The Hearing Officer recommended the maximum penalty of $5,000.00 per violation, or $95,000.00 total, due to the "grave and tragic consequences" of Petitioner's acts and omissions. (*Id.* at 38-39.) The Proposed Report was mailed to Petitioners at the Bethlehem address. (*Id.* at 41.)

The Bureau filed exceptions to the Proposed Report. (*Id.* at 43-56.) On August 23, 2023, Petitioners, represented by new counsel, filed an "Answer to [OSC] *Nunc Pro Tunc*," an "Answer to [MDFA] *Nunc Pro Tunc*," and exceptions to the Proposed Report. (*Id.* at 58-63; Certified Record (C.R.) Items 7, 10.)[4] Following additional briefing, (C.R. Items 11-12), the Secretary issued her April 3, 2024 Order adopting the Hearing Officer's recitation of the history and findings of fact in their entirety. (Order ¶ 1.) The Secretary also adopted the Hearing Officer's Conclusions of Law 1 through 4 in their entirety. (*Id.* ¶ 2.) The Secretary, however, replaced the remaining Conclusions of Law with her own and found 39 violations of the Act. (*Id.* ¶ 3, Conclusions of Law ¶¶ 5-16.) The Secretary explained Petitioners were properly served with the OSC and MDFA but did not file an answer, resulting in the averred facts being deemed admitted. (*Id.* at 3-4.) Like the Hearing Officer, the Secretary said it was unclear how the Bureau determined there were 30 violations, but she concluded there were 39 violations alleged and ultimately proven.

---

[4] It appears the Answer to OSC *Nunc Pro Tunc* was included in the Reproduced Record twice. (*Compare* R.R. at 58-63 *with id.* at 65-70.)

4

(*Id.* at 4, 8.)  The Secretary imposed the maximum $5,000.00 per violation civil penalty for a total of $195,000.00 and found Petitioners were jointly and severally liable for same.  (*Id.* at 8.)

Thereafter, Petitioners filed a timely Petition for Review with this Court.

## II.    PARTIES' ARGUMENTS[5]

Petitioners first argue the Secretary erred by not accepting their late filings, leading to a procedural default that deprived them of the opportunity to present their case on the merits.  They assert the Secretary should have utilized a civil standard for non-jurisdictional deadlines as set forth in *Muma v. Pennsylvania Department of Health, Division of Nursing Care Facilities*, 223 A.3d 742 (Pa. Cmwlth. 2019), specifically, the standard found in Rule 4014 of the Pennsylvania Rules of Civil Procedure, Pa.R.Civ.P. 4014, related to deemed admissions in the discovery process.  When the three-part test for withdrawal of deemed admissions is applied here, Petitioners posit it supports allowing them to proceed on the merits.  To the extent the Bureau argues service was proper, Petitioners assert the Court should not consider any contact with their former counsel who told the Bureau he was not representing Petitioners in formal proceedings.[6]

Alternatively, Petitioners argue the Order still requires reversal for a number of reasons.  First, Petitioners contend it does not recognize the distinction between corporate and personal liability.  Petitioners assert that none of the criteria for imposing personal liability on Mr. Atiyeh were present.  They argue the imposition

---

[5] Our review of an agency decision is limited to whether an error of law was committed, constitutional rights were violated, that the agency's practice or procedure was not followed, or that findings of fact are not supported by substantial evidence.  *E. Coast Vapor LLC v. Dep't of Revenue*, 330 A.3d 521, 538 n.6 (Pa. Cmwlth. 2025).

[6] We have combined Petitioners' arguments from their principal and reply briefs.

of joint and several liability was the result of the Bureau wrongly identifying the corporate entity and finding it was not registered, when Adam's Tree was registered. Second, Petitioners argue that the Secretary based some of the violations on conclusions of law, not deemed factual admissions. As an example, Petitioners assert any violation based on minors being "employed" must fail because there is no allegation that any minors received compensation, which is an element of the definition of "employ." Finally, Petitioners argue the Secretary abused her discretion by imposing the statutory maximum penalty, which was 30% greater than the penalty requested by the Bureau in its OSC.

The Bureau responds that there was no error in granting the MDFA, claiming Petitioners were properly served in accordance with the General Rules of Administrative Practice and Procedure (GRAPP).[7] The Bureau asserts Petitioners had notice and an opportunity to be heard, which is all that is required. Despite proper service, the Bureau argues Petitioners did not file an answer for 139 days, which was after the Hearing Examiner issued the Report and Recommendation. The Bureau argues Petitioners' reliance on caselaw related to untimely pleadings is misplaced as that law is distinguishable and/or inapplicable.

The Bureau also argues that the Act provides for joint and several liability and there is no requirement to pierce the corporate veil. The Bureau cites numerous cases in which individuals were charged with violating the Act. The Bureau further argues it is well established that the failure to respond results in the deemed admission of facts.

Finally, the Bureau asserts agency heads have discretion to make their own findings. Here, the admitted facts establish the violations the Secretary found.

_____

[7] 1 Pa. Code §§ 31.1-35.251.

6

Further, the OSC, according to the Bureau, asserted facts to support 42 violations, although only 30 were identified under the heading "Charges." (Bureau's Brief at 27 n.5.)

## III. DISCUSSION

The Bureau initiated this matter pursuant to Section 35.14 of GRAPP, which provides:

> Whenever an agency desires to institute a proceeding against a person under statutory or other authority, the agency may commence the action by an order to show cause setting forth the grounds for the action. The order will contain a statement of the particulars and matters concerning which the agency is inquiring, which shall be deemed to be tentative and for the purpose of framing issues for consideration and decision by the agency in the proceeding, and the order will require that the respondent named respond orally, or in writing (as provided in § 35.37 (relating to answers to orders to show cause)) or both.

1 Pa. Code § 35.14. Responses to orders to show cause are governed by Section 35.37 of GRAPP, which provides:

> A person upon whom an order to show cause has been served under § 35.14 (relating to orders to show cause) shall, if directed so to do, respond to the same by filing within the time specified in the order an answer in writing. The answer shall be drawn so as specifically to admit or deny the allegations or charges which may be made in the order, set forth the facts upon which respondent relies and state concisely the matters of law relied upon. Mere general denials of the allegations of an order to show cause which general denials are unsupported by specific facts upon which respondent relies, will not be considered as complying with this section and may be deemed a basis for entry of a final order without hearing, unless otherwise required by statute, on the ground that the response has raised no issues requiring a hearing or further proceeding. **A respondent failing to file answer within the time allowed shall be deemed in default, and relevant facts stated in the order to show cause may be deemed admitted.**

7

1 Pa. Code § 35.37 (emphasis added).

In *Muma*, the Department of Health (DOH) issued an order to show cause on a nurse aide, alleging abuse of nursing home residents and providing 30 days for a response to the allegations. 223 A.3d at 745-46. After no response was received, a finding of abuse was entered on a registry. *Id.* at 746. DOH subsequently received a request for a hearing one day late. *Id.* A hearing officer ultimately concluded the request was late and that *nunc pro tunc* relief was not warranted. *Id.* at 747. On appeal, we distinguished a late request for a hearing from a late appeal, explaining the former was "more akin to a 'nonjurisdictional claim processing rule,'" whereas the latter was jurisdictional. *Id.* at 750 (quoting *Fort Bend County, Texas v. Davis*, 139 S.Ct. 1843, 1849 (U.S. 2019)). We reiterated our holding from *Eathorne v. State Ethics Commission*, 960 A.2d 206 (Pa. Cmwlth. 2008), in which we stated the *nunc pro tunc* standard was inappropriate if an untimely **appeal** was not at issue. *Id.* at 751. Instead, when it was an untimely pleading, such as a request for a hearing, we held certain Rules of Civil Procedure were more appropriate standards. *Id.* at 751-52. One example we provided was Rule 4014, related to requests for admissions. *Id.* at 752. That rule provides, in relevant part:

> Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 212.3[, Pa.R.Civ.P. 212.3,] governing pre-trial conferences, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him or her in maintaining the action or defense on the merits. Any admission by a party under this rule is for the purpose of the pending action only and is not an admission by the party for any other purpose nor may it be used against the party in any other proceeding.

Pa.R.Civ.P. 4041(d).

8

In *Muma*, although the nurse aide was not directed in the order to show cause to file an answer, we concluded that the effect of DOH's action was to conclude the nurse aide waived all objections, which is similar to the deemed admissions in Section 35.37 of GRAPP. 223 A.3d at 752. We also cited a number of cases in which the Court declined to conclude Section 35.37 of GRAPP was jurisdictional because the agencies in question did not immediately enter final orders but, instead, filed praecipes for entry of default judgment and deem facts admitted first. *Id.* at 753. In *Muma*, we vacated DOH's order and remanded for a hearing. *Id.*

Several years before *Muma*, the Court considered the effect of deemed admissions to requests for admissions in *Dwight v. Girard Medical Center*, 623 A.2d 913 (Pa. Cmwlth. 1993), another case cited by Petitioners. In *Dwight*, a trial court granted summary judgment in favor of the Department of Corrections (DOC) after the plaintiff-inmate did not timely respond to DOC's discovery requests. *Id.* at 914. We held that

> [w]ithdrawal of admissions should be granted where upholding the admission would practically eliminate any presentation of the merits of the case; where withdrawal would prevent manifest injustice; and where the party who obtained the admissions failed to prove that withdrawal would result in prejudice to that party.[] . . . The test of prejudice turns on whether a party opposing the withdrawal is rendered less able to obtain the evidence required to prove the matters which had been admitted.

*Id.* at 916 (internal footnote and citation omitted). *See also Joers v. City of Philadelphia*, 190 A.3d 797, 804 (Pa. Cmwlth. 2018) ("Granting judgment on deemed admissions is reversible error where there is no bad faith by the responding party or prejudice from the delay to the party who sought the admissions.")

9

By relying on deemed admissions, we stated that "the trial court [] totally eliminated any presentation of the merits of [the inmate]'s case against [DOC]," which was contrary to the plain language of Rule 4014 and "the standards favoring a resolution of an action on the merits." *Dwight*, 623 A.2d at 916. The Supreme Court subsequently confirmed that deemed admissions are not meant to subserve a decision on the merits, but rather are "a discovery tool intended to clarify issues, expedite the litigation process, and **promote a decision based on the merits**." *Stimmler v. Chestnut Hill Hosp.*, 981 A.2d 145, 161 n.18 (emphasis added).

While the Bureau attempts to distinguish *Dwight* on the basis it involved discovery in a civil matter, as discussed above, in *Muma*, we extended the civil standard to untimely pleadings that did not implicate jurisdiction. Here, the untimely filing was an untimely response to the OSC, which is nonjurisdictional. Therefore, pursuant to *Muma*, the Secretary should have considered whether to allow the late filing under the civil standard found in Rule 4014, not the *nunc pro tunc* standard applicable to untimely, jurisdictional filings. 223 A.3d at 751-52. A review of the Order does not show that the Secretary considered, among other things, whether the Bureau would be prejudiced by allowing the late filing. *Id.*; *Dwight*, 623 A.2d at 916. Nor did the Secretary consider whether there was bad faith by Petitioners. *Joers*, 190 A.3d at 804. The effect of doing so was to "practically eliminate any presentation of the merits." *Dwight*, 623 A.2d at 916.

Accordingly, we vacate the Secretary's Order and remand for the appropriate standard to be considered, and, if met, for a hearing on the merits.

## IV. CONCLUSION

Because it is not apparent from the record whether the Secretary applied the correct standard when determining whether to allow Petitioners to file late responses to the OSC and MDFA, we vacate the Order and remand this matter for further consideration and proceedings.[8]

**RENÉE COHN JUBELIRER,** President Judge

---

[8] Given our disposition, we need not reach Petitioners' remaining issues.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Adam Construction Excavator, LLC, :
t/d/b/a Adam's Tree Service & :
Removal, LLC, and Adam Atiyeh, :
      Petitioners :
         :
     v.     : No. 556 C.D. 2024
         :
Department of Labor and Industry, :
Bureau of Labor Law Compliance, :
      Respondent :

# O R D E R

 **NOW**, June 13, 2025, the Order of the Secretary of Labor and Industry, dated April 3, 2024, is **VACATED**.  This matter is **REMANDED** for further proceedings consistent with the foregoing memorandum opinion.

 Jurisdiction relinquished.

          _____

          **RENÉE COHN JUBELIRER,** President Judge